2007 OK CR 21

**Wesley Darrell GOREE, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2005–1088.**

Court of Criminal Appeals of Oklahoma.

May 23, 2007.

Royce Hobbs, Stillwater, OK, Attorney for defendant at trial.

Ed Goodman, Assistant District Attorney, Newkirk, OK, attorney for State at trial.

Bill Zuhdi, Oklahoma City, OK, attorney for petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Thomas Lee Tucker, Assistant Attorney General, Oklahoma City, OK, attorneys for respondent on appeal.

## *OPINION*

CHAPEL, Judge.

¶ 1 Wesley Darrell Goree was convicted in a non-jury trial of Counts I and II, Assault and Battery with a Deadly Weapon in violation of 21 O.S.2001, § 652(C), and Count III, Intentional Discharge of a Weapon into a Dwelling in violation of 21 O.S.2001, § 1289.17A, all after two or more former felony convictions, in the District Court of Kay County, Case No. CF–2004–191.[1] The Honorable Leslie D. Paige sentenced Goree to twenty-five (25) years imprisonment on each of Counts I and II, and twenty (20) years imprisonment on Count III. Goree appeals from these convictions and sentences and raises three propositions of error in support of his appeal.

---

1. Judge Paige also revoked Goree's five (5) year suspended sentence in Kay County District Court    Case No. CF–1997–307.

¶2 At approximately 4:00 a.m. on April 11, 2004, Goree fired several shots into a crowd of partygoers in front of Chastity Swindall's house. Audrie Hardiman and Swindall were shot and injured. At least one bullet entered the house. As the shots began, a guest at the party shot at Goree, injuring him. The victims and house were shot with Goree's gun. Goree claimed he began shooting after other shots were fired.

■ ¶3 In Proposition I Goree claims the trial court erred in allowing the State to amend the Information and modify the jury instructions, deleting the element of intent to take a human life. We find that Proposition I merits discussion, and publish this Opinion to fully consider this issue. We find that the trial court did not err in removing the element of intent to take a human life from the charges of Assault and Battery with a Deadly Weapon under 21 O.S.2001, § 652(C). Discussing § 652(C) in *Burleson v. Saffle*,[2] we noted, "Assault and battery with a deadly weapon, as set forth in this statute, does not explicitly require an intent to injure or kill if the weapon or force used is likely to produce death."[3] This conclusion is based on the current language of the statute, which was substantially revised in 1992.[4]

¶4 This revision divided § 652 into three separate sections. The Legislature separated the crime of shooting with intent to kill from the crimes of assault and battery with a

deadly weapon and attempts to kill, and added a section specifically prohibiting drive-by shootings as a separate criminal offense.[5] Section 651(A) now clearly and explicitly requires intent to kill. Neither §§ 652(B) nor 652(C) now have that explicit requirement. Reading an intent to kill element into § 652(B), prohibiting drive-by shooting, would contravene the Legislature's decision to make persons liable for drive-by shooting "in conscious disregard for the safety of any other person or persons"; this language makes no sense if intent to kill is also an element of the crime. The Legislature could easily have included an intent requirement in § 652(C) as well. It did not, instead referring to an assault and battery "using a deadly weapon" or "by any means likely to produce death." Neither of these phrases, on their face, require the State to prove that the defendant intended to kill his victim.

¶5 We acknowledge that the Uniform Jury Instructions (OUJI) and previous cases include, as an element of assault and battery with a deadly weapon, the intent to take a human life.[6] However, this is based on the previous version of § 652. Given the current statutory language, requiring the State to prove intent to kill for this crime would amount to adding an element not present in the statute. The jury instruction on this crime should reflect this change in the law. In conjunction with this case, the Court will refer this issue to the Oklahoma Uniform

2. 2002 OK CR 15, 46 P.3d 150.

3. *Burleson*, 46 P.3d at 153.

4. The statute previously stated: Every person who intentionally and wrongfully shoots another with or discharges any kind of firearm, with intent to kill any person, is punishable by imprisonment in the penitentiary not exceeding life. Any person who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another, or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding twenty (20) years.

5. Section 652(C) prohibits any assault and battery upon another, by means of any deadly weapon, or by such other means or force as is likely to produce death. It also separately prohibits attempts to kill and use of a deadly weapon in

resisting legal process. Read as a whole, § 652 separately prohibits five crimes (shooting with intent to kill, use of a vehicle to facilitate the intentional discharge of a weapon, assault and battery with a deadly weapon or by any means likely to produce death, attempts to kill, and use of a deadly weapon in resisting legal process). Separate criminal offenses may be set forth as subsections of the same criminal statute. For example, first degree felony murder and first degree malice murder are separate offenses which may be charged separately, although they are contained within the same statute. 21 O.S. 2001, § 701.7. *See also Pinkley v. State*, 2002 OK CR 26, 49 P.3d 756 (witness intimidation statute contains separate crimes with different elements in two subsections).

6. OUJI–CR (2nd) 4–6; *Ellis v. State*, 1992 OK CR 35, 834 P.2d 985, 992; *Hackett v. State*, 1988 OK CR 44, 751 P.2d 761; *Favro v. State*, 1988 OK CR 18, 749 P.2d 127; *Meggett v. State*, 1979 OK CR 89, 599 P.2d 1110.

Jury Instruction Committee to modify OUJI–CR(2nd) 4–6 by removing the fourth element, "intent to take a human life."

¶ 6 In Proposition II Goree claims the evidence was insufficient to sustain his convictions. We find that any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found sufficient evidence of the charged crimes beyond a reasonable doubt.[7] In Proposition III Goree claims his sentences are excessive. We find that, under the facts and circumstances of this case, Goree's sentences are not excessive.[8]

### Decision

¶ 7 The Judgments and Sentences of the District Court are **AFFIRMED.** The Order revoking the suspended sentence in Kay County District Court Case No. CF–1997–307 is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, V.P.J. and A. JOHNSON, J.: concur.

LUMPKIN, P.J.: concur in results.

LEWIS, J.: concur in part/dissent in part.

LUMPKIN, P.J.: Concur in Results.

¶ 1 I concur in the result reached in this opinion, but my analysis differs slightly with the majority opinion.

¶ 2 Under the plain language of 21 O.S. 2001, § 652(C), there are four different ways to commit assault and battery upon another: first, an assault and battery "by means of any deadly weapon;" second, an assault and battery "by such other means or force as is likely to produce death;" third, an assault

and battery that "in any manner attempts to kill another;" and fourth, as assault and battery "in resisting the execution of any legal process." Only one of these methods-option number three-expressly requires an intent to kill.

¶ 3 Using a straightforward, common sense approach to this statutory language, the State does not have to prove a specific intent to kill when a person assaults and batters another "by means of a deadly weapon" or "by such other force as is likely to produce death." That is, the act of using the deadly weapon or unreasonable force makes proving an intent to kill superfluous, as one's general intent to commit the act in question suffices to bring about the necessary criminal sanctions.

¶ 4 Furthermore, under the final category, a person who commits an assault and battery against another while "resisting the execution of any legal process" need not have an intent to kill that person. Obviously, our Legislature has determined that one's attempt to thwart justice in such manner and the possible ramifications to our legal system are alone sufficient to make one criminally liable.

¶ 5 Under the third category, however, it would seem that an intent to kill is required. How could one accomplish an assault and battery upon another that "in any manner attempts to kill" that person, without an intent to kill? However, I have questions about the language of this third option, in that it appears to conflict with other statutory prohibitions against attempted murder. Therefore, I would construe this option as prohibiting any assault and battery that includes a specific intent to kill.

¶ 6 Here, Appellant was charged with two counts of committing an assault and battery

---

7. *Dodd v. State,* 2004 OK CR 31, 100 P.3d 1017, 1041–42. Goree shot at a house and into a crowd of people, injuring two victims. He relies in part on the State's failure to prove that he intended to kill his victims but, as we held in Proposition I, this is not an element of assault and battery with a deadly weapon. Goree also claims that the evidence shows he acted in self-defense. Because Goree fired the first shots, the trial court rejected this claim of self-defense at trial and the jury was not instructed on it. We

agree that the evidence did not support that claim.

8. *Rea v. State,* 2001 OK CR 28, 34 P.3d 148, 149 (reaffirming the Court's use of the "shock the conscience" standard and noting that, as with a proportionality review, such a standard requires consideration of all the facts and circumstances of the case and the defendant's background).

under the first option "by means of a deadly weapon." Therefore, the trial judge did not err by deleting the fourth element listed in our current OUJI instructions for this offense: "with the intent to take a human life."[1] That intent to take a human life was no longer necessary, because Oklahoma's Legislature determined that an assault and battery that occurs when one fires a gun into a home that the shooter knows is occupied is a very serious criminal offense, worthy of greater punishment than a simple battery.

LEWIS, Judge, Concur in Part, Dissent in Part.

¶ 1 I concur in the Court's decision to affirm count three of the Judgment and Sentence in District Court Case No. CF–2004–191 and in the decision to affirm the order revoking the suspended sentence in District Court Case No. CF–1997–307. However I would hold that counts one and two of District Court Case No. CF–2004–191, assault and battery with a deadly weapon must be reversed and remanded to the District Court for a new trial; therefore I respectfully dissent to the Court's Opinion regarding these counts.

¶ 2 I find reversible error in the trial court's failure to instruct the jury that assault and battery with a deadly weapon requires intent to take a human life as required by 21 O.S.2001, § 652(C). My disagreement is based on three reasons. First, despite the majority's statement that § 652(C) was discussed in *Burleson v. Saffle*, 2002 OK CR 15, 46 P.3d 150, I find that § 652(C) was not fully analyzed, and the language cannot be relied upon to support the conclusion.

¶ 3 Second, the majority also states that the 1992 revision to § 652 substantially changed the elements of the offense of as-

sault and battery with a deadly weapon; however, I find no substantial change in the specific language of § 652(C) which would have put this Appellant on notice that the State would be relieved of the burden to prove the essential element of an intent to take a human life. And, third, even if today's Opinion is a correct interpretation of the current statute, *ex post facto* principles forbid this interpretation to be applied to Appellant.

¶ 4 Throughout the history of Section 652, this Court has interpreted the statute to require the intent to kill or take a human life. As late as 2004, this Court stated that § 652 criminalizes all attempts to kill. *Messick v. State*, 2004 OK CR 3, ¶ 13, 84 P.3d 757, 761 ("[Section] 652 applies to all attempts to kill."). In order for a person to attempt to kill, that person must have the intent to kill. *See State v. Fletcher*, 2006 OK CR 11, ¶ 12, 133 P.3d 339, 341 (stating black letter law— in order to prove a person guilty of an attempt to commit an unlawful act, the State must prove the intent to commit the specified act). While *Messick* may stand for the proposition that § 652 takes the place of attempts to kill brought under the general attempt statute,[1] no mention is made that § 652(C) also relieves the State from proving a specific intent to complete the attempted act.

¶ 5 In *Ellis v. State*, 1992 OK CR 35, ¶ 35, 834 P.2d 985, 992, this Court stated that the crime of assault and battery with a deadly weapon requires "proof of an assault and battery upon another person with a deadly weapon with the intent to take a human life." Comparing the statute at the time of *Ellis* with the current statute, I find that the pertinent language, set forth below, has not changed in any substantive manner.

---

Any person who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another, or in resisting the execution of any legal process, is punishable by imprisonment in the peni-

C. Any person who commits any assault and battery upon another, including an unborn child as defined in Section 1–730 of Title 63 of the Oklahoma Statutes, by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another, including

---

1. It was error, however, to substitute that element with another element, "likely to produce death," as that is not required under the statute. However, that error is harmless, as it benefited

Appellant by increasing the State's burden of proof.

1. 21 O.S.2001, § 42.

| | |
|---|---|
| tentiary not exceeding twenty (20) years. | an unborn child as defined in Section 1-730 of Title 63 of the Oklahoma Statutes, or in resisting the execution of any legal process, shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding twenty (20) years. |
| 21 O.S.1991, §652. | 21 O.S.Supp.2005, §652. |

¶ 6 It is telling that even though the legislature has added language broadening the scope of potential victims and divided the statute into different paragraphs, the legislature has done nothing to vitiate this Court's interpretation that the language now contained in § 652(C) criminalizing assault and battery with a deadly weapon requires intent to take a human life. Even before this statute was divided into lettered paragraphs, the statute was amended in 1977 to provide for different punishments depending on the method of the commission of the crime: i.e. Shooting with intent to kill, which contained a maximum punishment of life, and assault and battery with a deadly weapon (at issue here), which contained a maximum punishment of twenty years. Both of these separate crimes were held to contain the intent to take a human life element.[2]

¶ 7 Many times the legislature has rewritten this statute, but not once has it indicated that our interpretation of the statute was wrong. However, this Court does so today without direction from the legislature. Therefore, I believe this Court should apply our prior case law to Appellant's case.

¶ 8 The third reason Appellant's convictions for assault and battery with a deadly weapon must be reversed, despite the majority's new interpretation of § 652(C), is that today's Opinion represents a judicial enlargement of a criminal statute creating a disadvantage to Appellant which was unforeseeable, thus it violates *ex post facto* principles. *See Hughes v. State*, 1994 OK CR 3, ¶ 20, 868 P.2d 730, 735, *quoting Bouie v. Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964) ("If a judicial construction of a statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect."). By

2. See cases cited in footnote 6 of the majority

eliminating an essential element that the State was required to prove beyond a reasonable doubt, the majority has created a new crime which was unforeseeable and creates a disadvantage to Appellant, thus the majority Opinion cannot apply to him, even if correct.

¶ 9 For the above reasons, I respectfully dissent to the majority's analysis of proposition one and the majority's decision to affirm Appellant's convictions for assault and battery with a deadly weapon. I concur with the decision to affirm the remaining counts and the revocation of his suspended sentence.

